In re MOYER.

(District Court, E. D. Pennsylvania. April 12, 1899.)

No. 6.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—SUFFERING PREFERENCE.

Under Bankrupt Act 1898, § 3, cl. 3, providing that it shall be an act of bankruptcy if a debtor shall have "suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings," and not vacated or discharged such preference "at least five days before a sale or final disposition of any property affected," where a creditor actually obtains a preference by entering judgment on a warrant of attorney previously given by the debtor, and levying execution on his stock in trade, the debtor being then insolvent, such debtor commits an act of bankruptcy if he fails to discharge such preference by filing his voluntary petition in bankruptcy (having no valid defense against the debt or the lien obtained by the levy), although he does not in any degree procure the entry of the judgment, or even know of it.

2. SAME—PREFERENCE—WARRANT OF ATTORNEY.

Within the meaning of the bankrupt act, a creditor obtains a preference by entering judgment on a warrant of attorney, and levying an execution thereunder on the debtor's stock in trade, within the time limited by the act, the debtor being then insolvent, notwithstanding that the warrant of attorney was given more than four months before the filing of the petition in bankruptcy against such debtor, and at a time when he was solvent.

In Bankruptcy. On motion for adjudication in involuntary bankruptcy.

Greenwald & Mayer, for petitioning creditors.

Thomas H. Capp, for certain creditors.

Howard C. Shick, for alleged bankrupt.

McPHERSON, District Judge. This is a case of involuntary bankruptcy, and the motion to adjudicate rests upon the following facts: Between December, 1897, and June, 1898, Henry Moyer was a solvent merchant. At different times during that period he borrowed about $6,500 from several members of his family, securing the respective loans by promissory notes containing warrants of attorney to confess judgment. These creditors took no steps to collect their debts until November 14 and 16, 1898, when they entered judgment upon the notes in the court of common pleas of Lebanon county, and issued ex-

ecutions, which were levied upon the goods in Moyer's store, these goods being his only estate. Before sale by the sheriff, other creditors presented the petition now being considered, to which Moyer replied, denying, in effect, that he had committed an act of bankruptcy. The dispute was sent to the referee for hearing, and meanwhile the sheriff sold the goods, under an agreement of the parties interested, and retains the fund until the court shall decide the pending motion. The remaining pertinent facts are these: The entry of judgment in November was without the debtor's knowledge or procurement, but at that date he was insolvent, and could not pay the debts. He did not have a valid defense, either against the debts themselves or against the lien obtained by the levies, and he did not file a petition in voluntary bankruptcy. He therefore failed to vacate or discharge the preference obtained by the execution creditors within five days before the sale.

The question presented by these facts is important. If the bankrupt act of March 2, 1867, were still in force, the construction announced by the supreme court in Wilson v. Bank, 17 Wall. 473, and in Clark v. Iselin, 21 Wall. 360, would probably require us to decide that Moyer did not commit an act of bankruptcy. He was passive during the proceedings in November, and did not in any degree procure the entry of the judgments or the issue of execution with intent to secure a preference to the creditors controlling this process. But, as we understand the bankrupt act of 1898, its provisions are essentially different from the earlier act, and require the court to come now to a different conclusion. Clause 3 of section 3 declares that it shall be an act of bankruptcy if a person has "suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference." It will be observed that this clause says nothing about the bankrupt's intent to enable the creditor to secure a preference; neither does it use the word "procure," which might seem to imply that the debtor must take some part in bringing the preference about. The dominant fact seems to be the actual result that has been attained by the creditor. If, through legal proceedings, he has succeeded in obtaining a preference,—that is (referring to section 60 for a description of preferred creditors), if the debtor is insolvent, and has either "procured or suffered a judgment to be entered against himself, * * * and the effect of the enforcement of such judgment * * * will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class,"—if this is the actual result of legal proceedings taken against an insolvent debtor, the clause in question requires the debtor to vacate or discharge such preference within a specified time, and, if he fails so to do, declares that he has committed an act of bankruptcy. How he is to vacate or discharge the preference is not specified; but the silence of the clause upon this point presents no difficulty. Legal proceedings are of many kinds, differing in the different states; but, whatever kind may be employed by the creditor, if the result of the proceeding gives him a preference over other creditors

of the same class, the insolvent debtor is thereupon charged with a clearly implied duty to vacate or discharge the preference within the time allowed him by the act. For example, if he has a defense to the debt, he may set it up; or, if he can overthrow the preference because the creditor's procedure has been defective, he may choose that method of attack. If neither of these weapons is available, he has still at command one sufficient weapon, of which he cannot be deprived, —he can apply promptly to the court in bankruptcy, and ask that his property should be ratably divided among his creditors. If he fails to move, his inaction is properly regarded as a confession that he is hopelessly insolvent, ·and as conclusive proof that he consents to the preference that he has declined to strike down. This construction of the statute seems to us to be the natural meaning of the clause in question, and to be in harmony with the general purpose of the act. A similar conclusion was reached a month or two ago in the district court for the Eastern district of Missouri in Re Reichman, 91 Fed. 624.

To avoid misapprehension, we desire to call attention to the fact that the preference complained of in the present case was obtained by the issuing of execution in November, and not by the giving of the judgment notes. When he gave the notes, the debtor was solvent, and no other creditor could complain; but, when execution was issued, he had become insolvent, and the situation had materially changed. If the judgments had been entered, say, in December, 1897, and he had then had real estate to be bound thereby, an enforcement of the lien in November, 1898, against the realty, would not offend against the clause in question.

We are of opinion that Henry Moyer has committed the act of bankruptcy described in clause 3 of section 3, and that the motion for adjudication must prevail.